Okay, could the lawyers approach and introduce yourself to the court, please? Arthur Rothman for the appellees. Okay, now the appellant, you understand you have to reserve some time for your rebuttal? According to the clerk up front, it was 10.10 at 5. I want to check that myself actually. I understand it won't take your time. Well, 15 minutes is what you get. So I'll take 10.10 at 5. Yeah, sure. Thank you. Okay, you can proceed. Thank you, Your Honors. Good morning, Your Honors. My name is Ted Donner again, and I represent the appellant in this case, Margaret Goldberg. Your Honors, there are three issues that we have raised by this appeal. Whether the trial court erred by denying us attorney's fees and costs under 765 ILCS 605-19, whether the trial court erred by denying our request on a number of motions to compel to produce documents that have been withheld as privileged when the defendants were claiming reliance on counsel, and the third is with respect to the trial court's interpretation of Article 7, Section 4 of the bylaws, in which the trial court found that that provision made the decisions of the condominium board binding upon my client, one of eight unit owners in the building. And according to that section, if it's interpreted that way, it would be final in binding. And I'm not sure if the court has a preference, which I take in order. I'll just start at the beginning otherwise. The first issue, Your Honor, with respect to the minutes is, I think, a fairly simple one. We have a statute that provides that if you prevail on a claim under that section, you are entitled to your fees and costs. I think one question, though, is whether there was an outright denial of the attorney fees or if, according to the appellees, your side failed to meet every element of the requirement under the statute to be awarded attorney fees. Your Honor, I'm hard-pressed to know what elements they're talking about because the court found we prevailed on that count. The count requires that we make requests that we determine and we prove specifically. We know the facts, but what about Judge Mikva's statement that really there was no injury to your client and that the outcome reached by Judge Riley was reasonable and she saw no reason to overrule his decision on not giving you attorney fees, not giving your client attorney fees? What she said, Your Honor, was that it seemed to her to be basically a question of equity and that it was a function of his discretion, and I think that specifically highlights the error. So what are you saying, that he failed to exercise any discretion or that he abused his discretion? I think he had no discretion, Your Honor, with respect to the question of whether to award attorney fees. We could, and I can now if you want, argue why we believe we were prejudiced. The statute says you prevail in an enforcement action to compel. You're entitled to recover attorney's fees, and it uses the word shall, and it is a mandatory statute. We have prejudice. We all know of examples where shall means may, and to quote Justice Wilson, shall means shall except when it doesn't. And is there a case that says shall in this instance means mandatory as opposed to directory? The cases that deal with the minutes decisions, Your Honor, we cited in our initial brief, and other than the Palm decision. Just give us the best decision that says that it's mandatory as opposed to subject to the discretion of the court, which can include zero. The most recent case, Your Honor, that deals with the issue is Palm. It deals within the city context. That is the city ordinance, which is the same. Taggart does it. City of McHenry does it. I want to say Kohler does it. My memory of which case does it, though, is, you know, it is the only times that it's been before this court, and it has not been before us a lot. Let me go back. Are you saying that those cases that you've just referred to all hold that attorney fees must be granted and there's no discretion to say under the facts presented it's equitable that no attorney fees be granted? I'm unaware, Your Honor, of any case in which the court has decided, that is the trial court has decided that the question was one of discretion. I believe that this statute has been read and its plain meaning to be shall be binding, and I think that's what's happened in the case law, and I'm trying to think if there's any case that I can recall that that argument has come up before where some trial court has said I read that to be discretionary, and I'm not aware of any such case. What I am aware of, Your Honor, is that this trial court found that we should get the court reporter fees. The ironic thing of it is we were awarded that cost and not the attorney's fees that resulted in that cost, let alone any of the other attorney's fees that have been incurred along the way to get those minutes. I'm not saying that this trial court may not, you know, if the case is remanded on this issue, may not decide that we should get less fees than I would argue for on any kind of approval, but I think the question of how much fees are awarded is the question of reasonableness and the question of discretion, whether to award them. The fundamental question of whether they should be awarded or not, that's not a question of discretion at all under the statute, and I think that's there for a reason, Your Honor. The problem is that we have an individual unit owner. She has to pay both my attorney's fees to go into the case and 18% of theirs to get educated about what's going on in her building, to get the documents she's asked for, to get finality in terms of what it is these people say they've decided, and she should be able to recover what she's asked for in the process. I don't know if that answers your question, but I know it's a concern, Your Honor, and I know that the Palm decision is still on appeal. I also want to speak very quickly, if I can, to the privileged stock issue, Your Honor. That second issue deals for us with the question of whether the onion has been peeled back enough. If you've seen this trial court record, you know that we have a voluminous record. We went through an entire history of asking for documents informally, asking for documents in court, doing motions to compel six of them by the time we were done. There was a very harsh ruling with respect to sanctions for discovery at the end, but in the end we never got the most fundamental documents, which is the documents that went to the question of whether there had been, in fact, reliance on counsel. Were those documents in existence? Your Honor, the privileged log that we provided to this court in the appellate, and I'm sorry I can't tell you what page it's at, but I can provide that later if you want, is 3,000 entries long. It is a 300-page document with at least 10 entries per page, identifying documents that were held as privileged. What we argued in the trial court was we should have at least been entitled to know what the subject matter of those documents were. Counsel argued that the subject matter waiver extended only to the specific communication that they decided to disclose to show reliance on counsel, that is the finished product, the letter to me saying here's our position. And we objected and said if you're going to rely on counsel, you have to show us all the questions on that subject matter. While you're entitled to minutes, what other documents do you think you're entitled to? All documents? Do you think you're entitled to all documents? Well, the privileged documents, Your Honor, the only reason we believe we're entitled to any of those is because there was reliance on counsel on the other counts in the complaint that served it as a defense. When they say we shouldn't be held to have breached our fiduciary duty, for example, because we relied on counsel, there's a subject matter waiver to show so that we can expect and examine the documents that show they relied on counsel. Yeah, but I notice in your brief on that subject matter you weren't citing condominium cases. Well, Your Honor, we're dealing with the attorney-client privilege, and I actually didn't think twice about what subject matter I was in at all. In fact, I would think if anything, condominium cases would make it more likely that we should get the documents. We actually paid. Well, I know it, but I'd like to see a condominium case that would show that you are entitled to those documents. Documents that are based on litigation are usually not something that is given to the owners. I would certainly agree, Your Honor, and if there was a document that was just about litigation, I would have expected that one to be withheld. Well, they tended to you letters, didn't they, from the law firm, in which the law firm gave its opinion as to the underlying issues, and those letters were tended to your client, weren't they? They tended to the final document, Your Honor. Wasn't that enough to show that they were relying on counsel, that they have a letter from their attorney that says that this is what you should do? Why do you think you're entitled to the underlying documents? Is it because you want to attack their decision? It's not their decision that's at issue in this issue. It's whether or not they relied on their counsel. The question, Your Honor, is chicken and egg. The question is did the attorney's letter result from an advocating of the client's position, or did the client's position result from the attorney's opinion? Well, that sounds to me like you want to attack the attorney's position. I wonder if that's really at issue here, because the question is did they rely on their counsel? And you have letters that show that their counsel advised them in this way. Why isn't that enough? I see that I'm running out of time on my initial ten minutes. Don't worry about it. Okay. Proceed. As a practical matter, Your Honor, the reason it's not enough is that when you are talking about a We're not talking about, you know, we had objected to a conflict saying that litigation counsel and the counsel that's representing you that we're paying for to give you corporate advice should be two different people. That objection was overruled. But since that conflict exists and since it was allowed to continue, I think you have to at least peel that back to say when somebody is being hired by the association in their corporate capacity to say we need to make a determination here and everybody in the building is helping to pay for that, objectively that building should be allowed to do that and should have counsel tell them here's what you want to do. And objectively, realistically, they should be, when they get that opinion, able to assert it in defense to some complaint later. We relied on counsel's opinion in making this determination. We had an example in this case, though, where it didn't work that way, which was when we had one of the counsels that we granted summary judgment on was Mr. Carno's position as a member of the board. Counsel in that case, and this is the prior counsel, had advocated to the board that they not ignore the residency requirement in the bylaws. She opined that there was at least a question of fact and there was a split of opinion on the question of whether you had a residency requirement that was enforceable or not in the bylaws. When that decision went forward, she was actually then told to advocate specifically that the law was clear and the residency requirements were unenforceable. Judge Riley found to the contrary, we want summary judgment on that. And that reliance issue, therefore, wasn't on the appeal or on the trial docket. It had already been decided a year prior. But even in that case, had we not accidentally, I think is probably what happened, I don't know that they meant for us to see those, but in the 10,000 documents, sorry, 30,000 they produced to us, there were these communications with the board where she said, no, that's not the position you should be taking. She took that argument, said no to them. They said, yes, we're going to do it. She went in and argued it. And $40,000 or $50,000 in attorney's fees later, almost 20% of which my client has to pay, we prevailed. They certainly would not have been able to argue with a straight face that they had relied on their counsel in that instance to make that determination. So what are the consequences of that, though? I think that was one of the concerns. So you prevailed on that where they didn't, in good faith, rely on counsel's counsel. What's the consequence of that? Well, and that's the problem with the final trial decision, Your Honor. The trial is built on these two pillars in terms of what Judge Riley found. He found on the one hand that they were, and he cites this five times in his opinion, speaks to this idea that this board acted fine because they acted in reliance on counsel. And on the other pillar, we have Article VII, Section 4, which is determination that if they make the decision, it's final and binding on my client. And for condominium law, Your Honor, that's the most fundamental problem before this Court. My client has, on the one hand, personal interest, regardless of whether the underlying decision is reversed, that that Article VII, Section 4 decision be reversed itself because we had this April 20, 2009, cutoff. She still hasn't been able to pursue injunctive relief. The building is still a shambles. We now have four units in foreclosure. To go back into a court and have somebody go, well, sorry, Article VII, Section 4 says any unit owner is bound by what the board decides and it's certainly binding on you, Mrs. Goldberg, is an inhibitor that we need to address today. And if there was any driving force to come to appeal, it was that. See, here's the problem with it all. When your client bought one of those eight units and saw that it was a condominium, you know, the board controls what happens. And I think what her basic problem here is when they wanted to redo everything, she didn't want to be responsible for somebody else who would not pay. Isn't that what the bottom line is here? There are circumstances, Your Honor, where a board's discretion is important. And there are certain circumstances. Every condominium case that has come out of this district in the last five, six years, has found in one way or another for the unit owner. Whether it's the windows at Carl Sandburg Village, whether it's the minutes at Palm versus 1800, we cited a litany of these cases. None of those decisions would ever have been allowed here if there was a golden rule that Article VII, Section 4, which you'll find in virtually every case. Every one of those cases could be distinguished from yours. None of them have any of the issues of your case. But, Your Honor, the question is whether this provision speaks to the idea that if the board makes a determination, it is final and binding on unit owners. And the distinction that you're mentioning is a distinction that I'm concerned about if I file another case. Will this next court, if I file another case, say, yes, these are different facts? There are circumstances. You know, the question of discretion in a board, whether they're exercising their business judgment correctly, circumstances in which that standard makes all the sense in the world to apply, and where a court should actually look at. And to some extent, Count 13 involved a question of business judgment. But business judgment, when you're making a determination as a board member and whether you personally can be sued, are different than what goes on in oppression, what goes on in determining whether somebody's doing what they're supposed to do in terms of the common elements, like what happened in the Carl Sandburg Village. You know what I think you're trying to do? You're trying to make sure that when the business judgment is a bad business judgment, because, you know, it came out bad, then the condominium owner would have a cause of action. That's not the law. Your Honor, the business judgment rule does not apply to oppression. It does not apply to some statutory requirements. The minorities have some interests. I'm not speaking to the business judgment rule, and I'm not asking you to overturn it. I'm asking you to overturn Article 7, Section 4. If this Court finds that the decision under Count 13, for example, is supported by the business judgment rule, I'm not in that context. I would be done with Count 13 other than to say that it should be found that that was done regardless of Article 7, Section 4, and that the requirements of Article 7, Section 4 are irrelevant to business judgment. Let me clear. I'm not sure I follow everything, but my understanding is that you're talking about Article 7, that it should be binding on a dispute between owners. That's what it says. Okay. But it cannot be binding on a dispute between the board and an owner. That provision specifically doesn't deal with that circumstance. But you're saying that the judge is trying to impose a as final and binding decision by the board on an owner? That's correct, Your Honor. That's what the Court said. But that doesn't mean that the owner can't litigate whether that decision is right or not. In court, does it? Well, if it is final and binding, Your Honor. It's final and binding in terms of you're not going to be allowed to reassert it before the board, but you can always challenge the board's decision as to whether or not it was outside the rules and regulations of the condominium declaration. Your Honor, I think language has to mean the same thing from one arena to the next. And when you talk about something like final and binding, think about it in the collective bargaining context. No court has ever found that when the collective bargaining. Because it falls within the concept of what you can negotiate. But if it falls outside what can be negotiated, you can always litigate whether it was meant to be within the agreement or not. Your Honor, I don't think my client would be able to unless this Court reverses. At least I'm worried about that. It says what it says. And the Court found what it found. And final and binding, unfortunately, I believe means final and binding. Doesn't the appellee take the position, though, that this final and binding issue is really their backup defense? And their position in the briefs are we're spending an awful lot of time talking about what is really their backup defense. And what they call their lead defense is something that you're not even speaking to. And if we find that their lead defense, simply that they were right, is a valid defense, then what are we talking about? First and foremost, Your Honor, I think that's one of the problems I had in the motion to reconsider, and it's one of the things I worry about here. If it really doesn't matter to everybody, I'll ask, please, can I have language that says Article 7, Section 4 doesn't bar me from filing another lawsuit for post-April 20, 2009 conduct or otherwise if the facts support those cases? Article 7, Section 4 should not be found under collateral estoppel. My first concern is that we not be barred from doing that. Shouldn't your first concern be winning your case? I'm sorry? Shouldn't your first concern be winning your case? Let's worry about everybody else a little bit later. I mean, they're saying that we don't even have to reach that issue. And if we look at their lead defense, they win. My first concern is with the current status quo of the building and being able to take care of a million dollars of debt and foreclosed units that are going to make this building difficult to live in ever unless we find some way to reconcile those problems. And my client having the courthouse door closed on her is the single largest obstacle to our being able to effectuate any change. Whether we do that through a remand in this case or whether we do that through a second case, in either case the biggest problem we have is the door that Article 7, Section 4 has interpreted. But the problem I have with that argument is that the Eppleys say that when they read the deck that they interpreted it with regard to the windows correctly and they interpreted it with regard to the restoration correctly. And you've been standing up here for 20 minutes and you haven't spoken to them. So, I mean, you know, is it your position that they were incorrect or do you want to talk about this Article 7 all day long? There are three counts that we're talking about with this if we get a remand. What I was saying was that we want to be able to get forward one way or another. The oppression count, which is count 8, sorry, is a count that we were given on April 20, 2009. We will be going back as long as we're not blocked by this Article 7, Section 4 interpretation to another case to talk about what's going on to try to get a receiver into this building to try to get this place fixed up. If we can, and we believe we should be able to under count 10, bring back what happened before that because we have not seen what happened with reliance on counsel. We were denied those documents. And because we believe the court did make a fundamental error of law, which we believe tainted his entire decision on that issue. Oppression deals with not good faith or business judgment by the individual board members. Oppression deals with the question of whether there has been some kind of specific oppression of an individual unit owner or small group of unit owners, whether the minority needs help. And the minority that needs help, Your Honor, is going to get saddled with the bill. And we haven't been able to present anything from 2009 through now three years later because of this block. If we can, as a matter of efficiency, I believe we should be able to go back. And I think it's not clear enough how much of his decision was based on that. Why don't you reserve the rest of your time for rebuttal, okay? However much time you will grant me, Your Honor. I'm sorry, I didn't mean to take as long as I can. You've only taken as long as we made you. Thank you. And we recognize that. Good morning. I'm Arthur Hoffman for the defendants. The key to understanding this case is what Judge Riley recognized, which is this all grows out of the notion that Mrs. Goldberg was being oppressed. And the specific ways she talked about being oppressed was, I didn't get proper resolution on my window claim, I didn't get proper resolution on my objections to the renovation project, I didn't get proper resolution on my challenges to the board's assertions of its authority. Counsel just indicated that there were two pillars to our defense and two pillars to Judge Riley's ruling, but that's completely wrong. There were three pillars. And the one that counsel doesn't address was what I call the lead defense, which is this board asserted as its primary defense that they properly applied the declaration to the renovation project, and they properly applied the declaration in terms of what their authority was. And Judge Riley made specific findings on all three of those issues and said, you are right, you did properly apply the declaration. So the fact that we have proper application of the declaration means, to my view, per se, that Mrs. Goldberg has not been oppressed. But because it's an oppression claim and because I would think good faith couldn't be more relevant than in an oppression claim, we had a backup defense that says, okay, we will demonstrate that regardless, Judge Riley, of whether you agree with how we applied the declaration, we were doing the best we could. We got letters from an attorney saying, here's the proper interpretation of the declaration when it comes to the window claim, here's the proper interpretation of the declaration when it comes to the renovation, and we shared those letters with Mrs. Goldberg and her counsel. How can that be anything but a good faith exercise of our role as the board of managers? And Judge Riley, on seven separate occasions in his opinion, talks about the board acting in good faith in that regard. So we have a lead defense that they've made no challenge to, except in their reply brief, which, of course, is a waived argument. It wasn't in their opening brief. They didn't challenge the merits of the board's decisions on appeal. They're now trying to challenge the merits in their reply brief, but that's waived. We've got a backup defense of which there's, right on the face of the letters from counsel that were, with the board's counsel that were shared with Mrs. Goldberg's counsel, it demonstrates on its face that it's good faith because the board acted in accordance with the legal opinions of the lawyers. And so what do we get? We get an argument that says, oh, well, there's a discovery dispute that we didn't get enough of the attorney-client communications. But what counsel is ignoring, and what counsel was allowed to do ad nauseum during the trial, is cross-examine the lawyer who wrote those letters about, wait, where's all the letters that shows what your basis was for the opinions you put in the letters? And what the answer he got over and over and over again is, the basis for my opinions is in the letter itself. It's not in some other unknown documents or some unknown letters. It's right in the letter itself. My letter says my opinion as to why they're handling the window issue properly is because the declaration says verbatim that the windows are the unit owner's responsibility. My opinion that the board is doing the right thing by getting a loan from the Harris Bank is because the declaration provision that you talk about that says that they can't do that doesn't apply to association loans. It applies to unit owner loans. And so this notion that there are a bunch of documents out there that explain the lawyers' opinions, it's a false premise. And counsel got to interrogate the lawyer who wrote those letters for an extended period of time with no limits whatsoever by the judge and no attorney-client privilege objections from me because I had no problem with him asking about the basis for those opinions. Now, the third pillar of the defense was this final and binding clause. I think Judge Riley got it right, but as Justice Garcia mentioned, it doesn't matter because the lead defense has gone unchallenged. So the court can affirm on that basis. The backup defense, while challenged, is not really challenging Judge Riley's findings of good faith. They haven't undermined that at all. It's based on a bogus discovery dispute issue. And the final and binding thing, well, I think Judge Riley got it right because I think he did properly interpret that section of the declaration. It doesn't matter whether he got it wrong because there's still plenty of reasons to affirm this decision. Briefly on the subject of the attorney's fees claim. Counsel talks about winning count 10, but just like so many of the claims in this case, count 10 had a lot of components to it and a lot of moving parts to it. And the part that counsel lost is important to distinguish the part where he won. The part where he lost was a traditional claim under which Section 19B claims would be involved. Let me stop you right there. Is that what you meant when you said that they didn't satisfy or they didn't qualify under the attorney fees statute in order to be awarded fees? Correct. That they didn't win? Correct. They had a claim that if they had won this part of the claim, they would have been entitled to fees. And that was the claim that said, you're hanging on to some minutes from 2005. I don't know what happened in 2005. You're refusing to give them to me. If that really was the facts, that would be a classic situation where Section 19B fees would be involved. But Judge Riley agreed with the testimony that these meetings that counsel was talking about occurred before my clients were even on the Board. And when my clients got on the Board and looked for meetings from that time period, there weren't any. And Judge Riley agreed. There were no such meetings. This Board did not refuse to give you something. You mean minutes. I'm sorry, minutes. Thank you for correcting me. Now, contrast that situation with the one component of Count 10 that they won. That was a situation where the person complaining knew exactly what happened at every meeting. Why? Because she hired a court reporter to go in and do verbatim transcripts. So she not only knew what happened at those meetings, she knew who said what, who objected to what, and what resolutions there were. So this was not a Section 19B situation of somebody who doesn't know what's going on and is being refused access to the information. She had all the information. The complaint that was being made was that the Board had prepared draft minutes of those meetings, and there was a dispute over what role these verbatim transcripts should play. Should they be attached? Do they trump the handwritten notes of the meetings? And Judge Riley absolutely agreed with counsel that despite the fact that there was a dispute over these verbatim transcripts, it was the Board's job to get those meeting minutes finalized, and he ordered them to do it. But that's not the kind of situation that 19B is talking about where someone needs to go into court because they're being kept in the dark and the Board's acting in secret. Mrs. Goldberg knew exactly what was going on in the Board because she had these verbatim transcript meetings. And so Judge Riley did the equitable thing and said, well, she paid for this court reporter. She should be reimbursed the cost of the court reporter, and she was reimbursed. So I don't think we need to get into this issue of attorney's fees in a 19B situation because I just don't think this is a 19B situation. Unless you have any other questions, I don't know. Just for my education, 19B, mandatory or directory, as you read it? It does have the word shell in it, and I know there are cases that talk about shell as mandatory. I don't think we even, but like I said, we don't need to get to that issue. I just don't think this was a 19B. I guess my real question was, is there a case that decides that issue, whether it's mandatory or directory? I couldn't find one in this paper. All right. Thank you. Can I just say, did Judge Riley enter an order, perhaps you can remind us, did Judge Riley enter an order finding that the association had violated the plaintiff's rights with regard to these later minutes, or did he just enter an order that said prepare them? Do you understand my question? Maybe it wasn't well-worded. I'm talking about, was there a written order with regard to these later minutes when it was ordered to go ahead and finish them and get them to Ms. Colbert? It's part of the judgment order. He gives them 90 days to finalize them and distribute them. Is there any language in that order that says that they're in violation of their obligations? Or does it just say prepare? I believe there is some language where Judge Riley is talking about the dispute over what to do with the dispute. And I believe he says words to the effect of, hey, yeah, there's a dispute, but hey, it's your job to get this done. You can't just, and I think he understood that every time this board did something, there was now a count 10, a count 11. As the case went on, the case kept getting bigger. Let me ask you that. I think he was saying, look, there's a dispute, but you've got to do it. Get it done. It's your job. And that's my question. Does 19B concern minutes that haven't been approved? So, therefore, you cannot violate 19B in the sense of not providing minutes because minutes haven't been approved. I think that's a potential kind of technical explanation. It makes sense to me. But Judge Riley wanted to make sure that they were approved first, and then they would be tendered. Right. And I think he was looking at the practical circumstances here and saying, hey, I'm not going to get involved in 19B in a situation where the unit owner knows exactly what's going on. That wasn't why the legislature put this fee-shifting provision in there. It was done to protect against people who just can't get access to what's going on. Thank you. Thank you again, Your Honors. Your Honor, to your last question, what Judge Riley said specifically is that the association has failed to abide by the statutory obligations imposed upon it to keep and maintain minutes of the board in meetings. There was no evidence that any minutes were taken regarding the 2005-06 board. That's the point counsel is making about the part of the claim. The record is clear, however, that the board has not approved any minutes subsequent to July 2007. This is an opinion over three years later. Accordingly, judgment is entered in favor of the plaintiff and against the association on count 10, and the association is ordered to produce to the plaintiff proper minutes for all meetings subsequent to July 2007 and to do so within 90 days of this judgment. He went on to find that he was denying specifically our request for attorney's fees under that count. He otherwise found in favor of us on all fours on the count, and with respect to their qualification issue, he had already found in the opinion. To date, the board has failed to comply with their obligation to keep proper minutes of their meetings and provide those minutes to any unit owner. Their excuse that they are waiting for Mr. Karno's suggested procedure demonstrated a conscious disregard of their legally imposed duty. That's what he found about that defense. They've just argued that he might have been considering we failed to deny our fees. Your Honor, the case was very clear. We asked for minutes. We were denied minutes. We were in litigation from 2006 until 2010. Even by then, they had the ability to turn that key and stop that female from running from day one forward. They chose not to give us the documents. They chose not to give us the minutes. The court found that their excuse about the minutes was a conscious disregard of their legally imposed duties. Every element we needed to satisfy content was there, except he decided that since we showed no prejudice, since we were informed by a court reporter, the statutory obligation to pay our fees should be abrogated. And, Your Honor, that's not what the statute is there to do. The statute is there to make sure that associations recognize the obligation and do what they're supposed to do. We shouldn't have to worry about bringing a court reporter for the rest of Mrs. Goldberg's life in this building. We should be able to count on the minutes being produced from minutes. No, we understand your argument on that point. Okay. Thank you, Your Honor. The only other point that I want to make is the counsel spoke to this idea that there were three pillars and the question of whether the court did it correctly. And I don't want to belabor this anymore. I just want to point out that with respect to each of these three counts that we have before you, 7, 8, and 13, they involve different standards, each of them, whether we're talking about the business judgment, which I think is involved in Count 13, or whether we're talking about strict statutory construction, which is what I think we're talking about with Count 7. The question for me is that this trial court swept all of them under the rubric of Article 7, Section 4, and so basically it doesn't matter. The board's decision is always binding. We asked the court for one of two things. First and foremost, please find that this article is not binding on Mrs. Goldberg and it was misinterpreted by the trial court, and she, therefore, should not be bound as a matter of collateral estoppel. We pointed out to the court that there is a requirement that we do that, and I understand Your Honor's point that we should be conscious of this case first. But in deciding whether to appeal, one of the things that we had to consider was the fact that we have decisions like Lady v. Montgomery, which says erroneous judgments, as well as correct ones, You know, I gave you some time for Repuddle just to rebut his argument. We have read these cases, and I've read, you know, at least 200 or 300 that you did not cite. I'm certain you have, Your Honor. Believe me. From all over the nation. You know, the condominium act started in California. I've read every case in California since the act started. Okay? Every case in Illinois. So I'm familiar with every case there is. Believe me. We all are here. And that's why the only reason the other counselor before you, Your Honor, is because we believe that it's impossible to tell from this decision whether he based everything he did on that. Those two pillars are the pillar counsel now says. No, we understand your argument. We've read your argument. You're just repeating yourself. I don't mean to do that. I apologize. Thank you, Your Honor, very much for your time. Okay. Well, you've given us a very interesting case, and we'll take it under advisement. Thank you, Your Honor. Call the next case.